## Neely *versus* Grantham.

A testator directed that his wife should have his mansion farm for life, and further ordered, " it is my will that if any one or two of my children wish to hold the old Mansion property, after two of them is of age, they can do so by agreeing themselves; if they cannot agree, they can get three disinterested persons to divide and agree for them—the eldest to have the first choice, and each of my children's share remaining in the property until they arrive at twenty-one years.  If, in case none of my children purchase the old Mansion, it must be sold to the best advantage for the use of my children, and not until after the decease of my wife."  He made his wife and a son his executors.  An attachment-execution was issued against the son to attach his " goods, chattels, debts, rights and money."  The sheriff returned that he had " attached all the interest of (the son), and all legacies given to (him) by the will—in the hands of (the son and the wife) executors of said will," and summoned them as garnishees.  The farm was afterwards sold by the executrix, under an order of the Orphans' Court.  *Held*, that the attachment bound the proceeds of the land in her hands; by Thompson, C. J., and Read, J., that the *land* was bound as such on the service of the attachment; by Sharswood, J., that the order on the will to sell was a conversion, and it was bound as personal estate.  Strong and Agnew, JJ., dissenting.

| 58 | 433 |
|----|-----|
| 159 | 271 |

| 58 | 433 |
|----|-----|
| 202 | 195 |
| 202 | 196 |

| 58 | 433 |
|----|-----|
| 21 SC | 246 |

| 58 | 433 |
|----|-----|
| 37SC | 201 |

8 P. F. SMITH—28

[Neely *v.* Grantham.]

May 7th 1868.   Before THOMPSON, C. J., STRONG, READ. AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Adams county :* To May Term 1868, No. 34.

This case was argued in May 1867 before WOODWARD, C. J., THOMPSON, and AGNEW, JJ., Judges STRONG and READ having been absent.   The judgment was then affirmed, AGNEW, J., dissenting.   A reargument was ordered, which was heard at this time.

It was an attachment-execution on a judgment recovered, July 22d 1856, by Joseph W. Grantham against Jonathan W. Neely for $1037.87.

John Neely by his will, proved November 8th 1848, gave to his wife the farm on which he lived for life for the support of herself and their children.   He further provided :

" It is my will that if any one or two of my children wish to hold the old Mansion property, after two of them is of age, they can do so by agreeing themselves, if they cannot agree they can get three disinterested persons to divide and agree for them—the eldest to have the first choice and each of my children's share remaining in the property until they arrive at twenty-one years.

" If in case none of my children purchase the old Mansion, it must be sold to the best advantage for the use of my children, and not until after the decease of my wife."

On the 22d of August 1856, Grantham issued an attachment-execution on his judgment.   The writ commanded the sheriff to " levy and attach the goods and chattels, debts, rights and money of Jonathan W. Neely" in satisfaction of the judgment, and that he should " make known to the said Jonathan W. Neely and to Hannah F. Neely and Jonathan W. Neely, executors of the will of John Neely, deceased, late of your county, that they·be and appear before our said court at Gettysburg, the 17th day of November next, to show if anything they the said Jonathan W. Neely and Hannah F. Neely and Jonathan W. Neely, executors of the will of John Neely, deceased, have to say why the said judgment, besides costs of suit, should not be levied of the effects of the said Jonathan W. Neely, in the hands of the said Hannah F. Neely and Jonathan W. Neely, executors of the will of John Neely, deceased, or either of them."

The sheriff returned that on the 25th of August he had attached " all the interest of Jonathan W. Neely, in the estate of his father, John Neely, deceased, and all legacies given to Jonathan W. Neely by will of said John Neely, deceased, in the hands of Hannah F. Neely and Jonathan W. Neely, the executors of said will, and summoned Jonathan W. Neely and Hannah F. Neely, as garnishees."

On the 23d of December, interrogatories to Hannah F. Neely were filed : inquiring the nature of Jonathan W. Neely's interest

[Neely *v.* Grantham.]

under his father's will; whether the interest was land not sold, and if so its value and the amount of his interest; what was the whole amount of the testator's estate in her hands, whether any and how much was uncollected, and the defendant's interest now due or to become due, and the amount already paid him.

The executrix answered, January 6th 1857, that the defendant's interest in his father's estate appeared by this will, that the Mansion Farm containing one hundred and fifty or two hundred acres remained unsold; that one of the children had died since the testator, a minor; that she had no estate in her hands in which the defendant was interested; that certain bonds due by the purchaser of the Mansion Farm are not yet due, but that the defendant made over all his interest in the farm in 1855 to one Mummert; that no portion of defendant's share in his father's estate was unpaid; that he could claim nothing under the will, except under its provisions in reference to the Mansion Farm. On the 16th of August 1864, on petition of Hannah F. Neely and of the children and devisees, the Orphans' Court directed the Mansion Farm to be sold under the Act of 1853. She returned, September 30th, that the land had been sold for $9600, payable April 1st 1865. On the 31st of December 1864 the plaintiff issued a scire facias on his judgment against the defendant. On the 20th of March 1865 the account of the executrix charging herself with the proceeds of the land was confirmed; it showed $3129.06 invested for the widow, and $6258.12 of the proceeds of the land for present distribution. On the 5th of June 1865 the plaintiff took a rule on Hannah F. Neely as garnishee to plead, and on the 1st of July 1865 she pleaded "*nulla bona.*" On the 26th of September 1865 judgment was entered against the defendant in the scire facias.

On the trial of the attachment-execution before Fisher, P. J., the plaintiff gave the above facts in evidence, except the interrogatories, &c., and rested.

The defendant then gave in evidence against the objection of the plaintiff assignment Jonathan W. Neely to George Mummert, dated April 9th 1855, recorded July 21st 1855; also, judgment, Hannah F. Neely against Jonathan W. Neely, entered May 19th 1863, for $1000; also, assignment, J. W. Neely to Hannah F. Neely, dated December 31st 1864, of his interest in his father's estate, recorded January 10th 1865; also, that at the time of the service of the attachment Mrs. Neely was not living on the mansion farm.

The garnishee (executrix) requested the court to charge:—

1. That there are no moneys proven to have been in the hands of the garnishee, Hannah F. Neely, within the grasp of the attachment in execution in this case.

2. That there having been no funds in the hands of the garnishee at the time of the service of the attachment, and a period

[Neely *v.* Grantham.]

of nearly nine years having elapsed without further proceedings, the attachment could not take effect upon moneys coming into the hands of Hannah F. Neely, under the proceedings in the Orphans' Court given in evidence.

3. That at the time of the service of the attachment, and under the provisions of the will that the mansion farm should not be sold until after the death of Hannah F. Neely, the widow, she did not in law occupy such a relation to any fund that might be produced from the sale of the mansion farm as would subject her to the liability of a garnishee under the attachment in this case.

4. That the effect of the attachment is fixed in law by the facts existing at the time of the service thereof, and it could not acquire any greater efficacy by reason of the proceedings in the Orphans' Court resulting in the sale of the mansion farm.

The court answered the first three points in the negative, and the 4th as follows:—

" The effect of the attachment was fixed at the time of the execution thereof, and acquired no greater efficacy by virtue of the sale of the real estate under an order of the Orphans' Court obtained at the instance and by the agreement of Mrs. Neely and the other heirs.  But long previous to the sale, the sheriff's return shows that he attached all the interest of Jonathan W. Neely in the estate of his father, and that notice of it was given to the defendant and Mrs. Neely as garnishees.  The change of the real estate into personalty at their instance and that of the other heirs could not divest the lien acquired by the attachment of the plaintiff, or prevent his recovery of the proceeds now in the hands of Mrs. Neely."

After stating the facts, the court further charged:—

" The court instruct the jury that as the attachment No. 4, November Term 1856, which was executed on the 25th of August 1856, has precedence of the assignment of Jonathan W. Neely and Laura O. Neely his wife, dated 31st of December 1864, to the garnishee, Mrs. Neely; the plaintiff is therefore entitled to recover in this case.  The fact that the real estate attached was afterwards converted into money, makes no difference.  The plaintiffs are entitled to the funds produced by the sale of the real estate, notwithstanding the fact that the whole of it may have been changed into money since the issuing of the attachment by virtue of·an order of the Orphans' Court, if Mrs. Neely had actual notice of the issuing of the attachment.  The return of sheriff Thomas on that writ shows she had notice.  The fact that Mrs. Neely resided in Huntertown, and not on the premises upon which the attachment was executed, cannot be set up as a defence by the defendant or the garnishee, as it was served on both of them."

The jury found " for the plaintiff the sum of $1341.02 against

[Neely *v.* Grantham.]

Hannah F. Neely, garnishee, $447.01 of which is not payable till after the death of the said Hannah F. Neely, and that execution be stayed thereon until after her decease."

Hannah F. Neely, garnishee, took a writ of error.

She assigned for error the answers to her points and the charge of the court.

*D. McConaughy* (with whom were *M. & W. McClean* and *J. C. Neely*), for plaintiff in error.—The plaintiff should have proceeded against the defendant's interest as real estate: Acts of July 27th 1842, § 1, Pamph. L. 436, Purd. 492, pl. 6; April 13th 1843, § 10, Pamph. L. 235, Purd. 435, pl. 35; June 16th 1836, § 22, 35 Pamph. L. 764, 767, Purd. 432, 434, pl. 12, 30. The writ was not so executed as to attach real estate: June 13th 1836, §§ 43, 49, Pamph. L. 580, Purd. 491, 493, pl. 1, 9; April 18th 1853, § 6, Pamph. L. 505, Purd. 852, pl. 6.

*R. G. McCreary*, for defendant in error.—The sufficiency of the writ could not be raised under the plea of *nulla bona:* Potter *v.* McCoy, 2 Casey 458. The writ is sufficient: Layman *v.* Beam, 6 Wh. 181; Acts of 1836, 1842, 1843, *supra.* The plea in effect was that the garnishee had no goods in her hands at the service or afterwards: Act of 1705, § 2; 1 Sm. L. 46; Sergeant on Att. 99, Privil. of London 255; Silverwood *v.* Bellas, 8 Watts 420; Sheetz *v.* Hobensack, 8 Harris 412; Mahon *v.* Kunkle, 14 Wright 216.

The judgment of the court below was affirmed, STRONG and AGNEW, JJ., dissenting.

The following opinion, in which READ, J., concurred, was delivered, July 2d 1868, by

THOMPSON, C. J.—The judgment below must be sustained, if at all, on the sufficiency of the levy on the attachment of the defendant's interest in his father's estate, that interest being at the time real estate. It is firmly settled with us, that the equitable conversion of realty into personalty, by force of a direction in a deed or will to sell, only takes place where the direction is positive and absolute: Nagle's Appeal, 1 Harris 260. And this, as well as other cases, to which reference will be made, will conclusively show, that if a proposed sale is contingent, or eventual in a deed or will, equitable conversion does not follow. Nor will it follow even from an inevitable necessity to sell, in order to administer some provision of the will. On these points, in addition to the case cited, see Bleight *v.* The Bank, 10 Barr 131; Stoner *v.* Zimmerman, 9 Harris 397; Anewalt's Appeal, 6 Wright 417; Chew *v.* Nicklin, 9 Id. 84. The *rationale* of the rule rests on a principle in equity, that that which ought to be done is to be con-

sidered as done. We adhere therefore to the opinion heretofore expressed, that the defendant's interest in his father's estate being a share in what is denominated in the will the " Old Mansion Property," was at the time of the levy real estate, the provision of the will being, " that if any *one or two* of my children *wish to hold* the Old Mansion Property, after two of them is of age, they can do so by agreeing among themselves; if not agreeing, they can get three disinterested persons to divide and agree for them—the oldest to have the first choice; and each of my children's share remaining in the property until they arrive at twenty-one years." " If none of my children purchase the Old Mansion, it must be sold to the best advantage for the use of my children, and not until the decease of my wife." The contingent direction is apparent here, and as there was no actual conversion at the time when the attachment was served, the interest of the defendant remained real. It is very evident that no sale by the executors was intended, if the children should agree to hold the land as provided for in the will. It is expressly contingent on this, whether there was to be a sale or not. It is therefore clearly, according to the authorities cited, not a case of equitable conversion by will.

Notwithstanding this, we think the conclusion arrived at on the former argument was correct. Mrs. Neely, the garnishee, went to trial solely on the plea of *nulla bona*. This of course waived any question as to the form of the writ or fact of service. Conceding that the effect of the service, as to fixing a lien on the interest attached, remains an open question to be considered under the plea, we turn our attention to the statutes bearing on the point, to ascertain if a lien was fixed. If it were not, the garnishee's judgment and assignment took precedence of it, and was entitled to the money on the sale of the defendant's interest, and thus the plea of *nulla bona* would be sustained.

The 10th section of the Act of April 13th 1843, provides that " all legacies given, and lands devised, to any person or persons, and any interest which any person may have in the real or personal estate of any decedent, by will, or otherwise, which are subject to foreign attachment, by the Act of the 27th of July 1842, * * * shall be subject to be attached and levied upon in satisfaction of any judgment, in the same manner as any *debts due*, are made subject to execution by the 22d section of the Act of 16th June 1836, entitled an act relating to executions." Here is an explicit declaration as to what may be attached, and of the manner in which it may be attached.

In Gochenauer's Executors *v.* Hostetter, 6 Harris 414, Woodward, J., in delivering the opinion of the court, seems to classify what may be attached under the words used in the above section, thus: " ' *Legacies*' and ' *lands*,' given or devised by will or testa-

[Neely v. Grantham.]

ment, and *any interest* which any person or persons may have in the real or personal estate of any decedent, whether by will or otherwise." That was a case under the Act of 27th June 1842, extending foreign attachments to such interest, but the same words are used in the Act of April 13th 1843, the act now under consideration, and the classification there has equal application here. The objection in this case is, that the levy was defective in its generality. It was, "attached all the interest of Jonathan W. Neely in the estate of his father John Neely, deceased; and all legacies given to Jonathan W. Neely, by the will of John Neely, deceased, in the hands of Hannah F. Neely and Jonathan W. Neely, executors of said will, and summoned them as garnishees," &c.

If the classification referred to above be allowable, this was a sufficient levy, and bound the interest. It seems to me very evident, that a levy in this form must have been intended by the legislature, owing to the inherent difficulty which would be constantly occurring as to what interest a defendant really had in a devised or descended estate. In case of a will, it is often a question of great difficulty to determine the *nature* and extent of a devisee's interest; or whether it be real or personal. It is a question of difficulty in this case. Whether the interest be much or little, and when it may be realized, are questions arising in every case. These are facts about which a creditor, oftentimes, not cognisant of the provisions of the will, cannot know anything. This must have struck the mind of the legislature, and have superinduced the adoption of a general form of levy, without distinguishing as to the nature of the property to be attached. And this seems to have been thought by the court in the case cited above. And here it may be as well to say, we do not see any embarrassment that would result to an executor, if the interest attached be real, any more than if personal. The answer to the interrogatories, if honestly made, would disclose what the interest of a devisee is in the estate. And if any fraud or concealment were practised to cover it up, I see not why the value of the share might not be recovered as well as that of a chattel. A fraudulent garnishee could not complain of this, and an honest one would not have it to complain of.

But that this mode of attaching was intended, I think appears in the provisions deducible from the Acts of Assembly on the subject, which provide that a debtor's interest in a decedent's estate may be levied upon in *the same manner as debts due* are made subject to execution by the 22d section of the Act 16th June 1836. The section thus referred to, does not in itself direct the manner of seizing or attaching *debts due*, but declares them liable to execution like other *goods* and *chattels*. The 35th section of the act, however, declares that *debts due* may be attached and

[*Neely v.* Grantham.]

levied in satisfaction of a judgment "in the manner allowed in the case of a foreign attachment." When we turn to the Foreign Attachment Act of June 13th 1836, we find in the 8th section it is provided that in case of personal property, "the officer to whom such writ (foreign attachment) shall be directed, shall go to the person in whose hands or possession the defendant's goods or effects are supposed to be, and then and there declare, in the presence of one or more credible witnesses of the neighborhood, that he attaches the said goods and effects," as done here, and from that time forth, says the act, the same shall be bound and in the power of the officer. See 50 Id. It is not to be doubted that "goods and effects" include or embrace debts due: Bouv. Law Dict. verb. "*Effects.*"

We have thus the direction of the 10th section of the Act of 13th April 1843, to authorize the levy or attachment of a defendant's interest in the estate of a decedent by the general description of his interest without a specific designation, which is to be done in the same manner in which *debts due* are to be attached or levied, and when so levied and a refunding bond given, the act declares that the plaintiff in the judgment shall have the same rights in all respects which the debtor may have had, and no greater in any respect, and that they are by the act placed within his power. How long it shall continue bound is not said.

With these views, we are brought to the conclusion that the service of the attachment bound the interest of the defendant in his father's estate from its date; and as that was prior to the confession of judgment of Jonathan W. Neely, the defendant in the plaintiff's execution, to his mother, the garnishee, and his assignment of all his "estate, right, title and interest" in his father's estate, to hold in satisfaction of the judgment, the plaintiff below was entitled to the money in the hands of the garnishee, the proceeds of that share. Nothing more was claimed. It is very doubtful whether the garnishee in strictness was entitled to have given in evidence the assignment to her of the property attached in satisfaction of her judgment against Jonathan W. Neely, under the plea of *nulla bona;* at least without notice of special matter: Priv. Lond. 270; Tr. & Haley's Prac. by Fish, vol. 2, p. 848. But we have predicated nothing of this, and only suggest it for future consideration by the profession.

An objection of apparent force in this case, is the duration of the lien of the execution attachment in cases of this kind. In case of a foreign attachment levied on real estate, there is no limitation of the lien of the writ: Schacklett & Glyde's Appeal, 2 Harris 326. The lien, attributable to the execution of the writ, says Gibson, C. J., is a necessary consequence of a common-law principle which creates it whenever property is seized to make satisfaction; and he instances the fact that a levy or a *testatum*

[Neely v. Grantham.]

fi. fa. binds the land, though the judgment does not. That there is no limitation of lien in the writ of foreign attachment, see also Price on Liens 307; although the judgment is limited as in other cases. The writ operates as a lien, for the statute declares it shall bind without fixing any limitation, as already noticed.

The execution process by attachment is distinctly assimilated to the foreign attachment process by the Act of 16th June 1836, § 35, and by the 10th section of the Act of 13th April 1843. In the former, the execution of the process is to be in the manner allowed in case of foreign attachment, and in the latter the words are substantially identical. If there be no limitation of the lien of the writ in the one case, I see not how we are to import it into the other.

By the 51st section of the Foreign Attachment Act of 1836, where real estate shall have been attached, it is declared that the execution of the writ shall bind the same as against purchasers and mortgagees (and judgment creditors, vide 2 Harris 326), and that it shall be the duty of the sheriff to file in the office of the prothonotary of the court, a description of the property within five days after he shall have levied the attachment; and also to enter the same on his own docket. There is no limitation to the binding force of the levy declared. I know of no practice, however, of this kind in the execution-attachment process. It was intended as a means, no doubt, of notice to all persons of the lien of the writ: Report of Revisers, Parke and Johnston 713. But if it were a practice common to the execution attachment, as well as to the writ of foreign attachment, and had been omitted to be observed in this instance, Mrs. Neely could not complain of want of notice; she had it in the service of the attachment, and what the subject of it was she declares in her answer to the interrogatories propounded, and that interest she claims by assignment, after the attachment served.

Under the influence of the foregoing considerations, we think the execution attachment was entitled to be satisfied out of the proceeds of Jonathan W. Neely's interest in his father's estate, in preference to the claim of the garnishee, and. that the judgment must be                                                Affirmed.

The following opinion was delivered on the same day, by

SHARSWOOD, J.—I concur in affirming the judgment, though not for the reasons assigned in the opinion just delivered. My conclusion, though with much hesitation, is, that there was in this case a conversion. The will of John Neely is in some parts very obscure, but I think there is in it a positive and explicit direction that his land should at all events be turned into money. He evidently contemplated that on two of his children coming of age, one or both of them might wish to hold the Old Mansion property.

[Neely *v.* Grantham.]

If they should, he provides that they may "by agreeing themselves, if not agree, they can get three disinterested persons to divide and agree for them." It is rather difficult to suppose that the two children who first arrived at full age were to appraise the property and take it at their own price, or even have it appraised by three persons of their own selection. Yet certainly the testator intended some appraisement, for he immediately adds, "the eldest to have the first choice, and each of my children's share remaining in the property until they arrive at twenty-one years." However this may be, none of his children were to take or hold it without some act or election by them. "In case none of my children purchase the Old Mansion, it must be sold to the best advantage for the use of my children, and not until after the decease of my wife." Purchase implies sale, and sale means conversion into money. It matters not whether the purchase be by one or more of the children or by a stranger. Until the act is done, no interest vests in any of them as real estate. It is not like a descent of land in intestacy, subject to appraisement and allotment among all the children, or if all refuse, then to be sold. There, until the allotment or sale takes place, it is real estate; and it would remain so if no proceedings in partition were had. The children under the intestate law inherit by descent as tenants in common. But here if no act is done on the part of the children to take the property, it must be sold. I agree that to work a conversion, the direction to convert must be positive and explicit. The will, if it be will, or the deed, if it be by contract, must decisively fix upon the land the quality of money. A will or deed must direct a sale absolutely, or out and out, for all purposes, irrespective of contingencies, and independent of all discretion: Bleight *v.* The Manufacturers' and Mechanics' Bank, 10 Barr 131. Here there is the most absolute direction. "If none of the children *purchase*, it *must* be sold." It must be sold then either to one or more of the children, or to a stranger. There is no contingency other than such as the law implies wherever there is a direction to sell absolutely. The parties interested in the proceeds may elect to take the land as land: Smith *v.* Starr, 3 Whart. 62; Stuck *v.* Mackey, 4 W. & S. 196; Willing *v.* Peters, 7 Barr 287; Miller *v.* Meetch, 8 Id. 417. If a testator should provide that on the death of his wife his land should be appraised by disinterested persons, and offered at that price to his children in succession, and if no one or more elected to take that then it should be sold and the proceeds divided, this, it appears to me, would be a conversion. No one of the children would have any interest in the land as land until election. A judgment would be no lien on their interest. There is no contingency as to the conversion other than such as exists in every the most absolute direction to sell where those interested are *sui juris*. They may

[Neely *v.* Grantham.]

disappoint the conversion by electing to take the land as land. When they do so elect, it is a new acquisition of title: Burr *v.* Sim, 1 Whart. 252. If a testator, after directing absolutely a sale and division of the proceeds among his children, should add, "unless they wish to hold it," it would not, as it appears to me, be on account of such expression any the less a conversion. The contingency is no more than the law would have annexed without those words. *Expressio eorum quæ tacite insunt nihil operatur.* It was entirely different in Nagle's Appeal, 1 Harris 260. There the sale was not to take place *unless the majority of the children agreed.* "There is a wide difference," said Judge Bell, "between giving assent to a power of sale, without which it is wholly inoperative, and defeating an existing power by electing to take the subject of it in specie. In the former instance the nature of the property remains intact until assent; in the latter it is converted until election made."

Considering, then, that the interest of the defendant in the estate of John Neely was personalty, I perceive no error in the rulings of the court below. If, however, it was real estate, the strong inclination of my mind would be to unite with my brothers Strong and Agnew in holding that the attachment-execution not having been served in the manner provided by law in the case of foreign attachment, was not available to create a lien independent of the judgment upon which it issued.