## Lloyd's Estate.

*Wills—Construction—Power of sale—Conversion—Partition—Statute of limitations—Receipt—Evidence—Act of June 7, 1917.*

1. Under the Act of June 7, 1917, P. L. 337, the Orphans' Court has jurisdiction to award partition of the real estate of a decedent at the instance of a party having an interest therein at any time after his death.

2. The law does not favor conversion, but as a general rule, where there is a clear intent to convert, it takes place from the death of the testator.

3. Where there is a discretionary power of sale or there is necessity to sell to execute a will, or a fund is created from a blending of real and personal property that is devised as money, such conversion does not become effective in law until at least certain conditions arise calling for its use.

4. Where there is a positive direction in a will to sell real estate, and it is coupled with no qualification as to a division of the property between the heirs other than that which the law gives, such direction to sell works an equitable conversion; but a contrary rule prevails where there is a direction to sell and divide the proceeds in unequal proportions.

5. Where testator directs his executor to expose his "real estate to sale and divide the proceeds among my children" in proportions specified, not share and share alike, and no sale is ever made by the executor, there is no equitable conversion of the real estate.

6. The statute of limitations does not run against a remainderman during the life of the tenant for life.

7. A receipt for money for an alleged transfer of an interest in land is not admissible where the receipt bears no earmarks of its having been given for an interest in the lands sought to be partitioned.

Petition for citation to show cause why an inquest in partition should not be awarded in the estate of Evan Lloyd. O. C. Cambria Co.

*Morgan W. Evans* and *Thomas C. Evans,* for petitioners.

*P. J. Little, Philip N. Shetty* and *L. S. Jones,* for respondents.

REED, P. J., April 14, 1924.—Evan Lloyd, having made his last will and testament, died in 1860, and said will was duly probated on Nov. 28, 1860, in the Register's Office of Cambria County.

In this will the decedent, after having made provisions for his funeral expenses and the payment of his debts, left the residue of his personal property to his wife, Elizabeth, absolutely, on condition that she maintain three minor children, namely, Abner, Mary Jane and Newton, until they arrived at the age of twenty-one years, and he provides further: "I give unto my said wife all my real estate, consisting of two farms (now occupied by me), for and during the term of her natural life should she remain unmarried and should she again marry, then she shall receive yearly one-third part of the proceeds of said real estate during her life and at her death or marriage, as the case may be, I direct my said Executor to have my said real estate appraised, and, if any two of my sons, with the consent of the third, or one with the consent of the other two, shall agree to take said farms at the price appraised, and pay their respective portions to all the other heirs as hereinafter stated, in payments as follows: One-fourth in hand and the residue in three equal yearly payments with interest, and, in case of failure to agree to take at the appraisement price, then I direct my Executor aforesaid to expose my real estate aforesaid to sale and divide the proceeds among my children as follows: First, said proceeds to be divided in three equal parts, and two-thirds parts thereof to be equally divided share and share alike between my three sons, Benjamin, Abner and Newton, and the other one-third to be equally divided share and share alike between my three daughters, Anna, Emma and Mary

Jane, and I hereby name John Williams, of Ebensburg, Executor of this my last Will and Testament and should he not live or be unable to carry out the provisions of this Will, I desire that the Orphans' Court of the County of Cambria shall appoint a suitable person to act in his stead."

The evidence which was taken in this case reveals the fact that Elizabeth Lloyd, the widow mentioned in said will, subsequently married John Bumford, and died in Feb. 20, 1883; that Mary Jane Lloyd, one of the above-mentioned children and devisees, intermarried with Augustine D. Flanigan, and died intestate on or about April 10, 1868, leaving to survive her as her sole heirs-at-law her husband, the said Augustine D. Flanigan, and a minor child, Lloyd Rowland Flanigan, the petitioner in this case. There is nothing on file in the records of Cambria County that would indicate that the executor named in the will ever had an appraisement of the farms of which the testator died seized, or that any of the sons had accepted said farms by virtue of the terms of said will at the appraisement and had paid out the other heirs in accordance with provisions in said will. It is in evidence, however, that all of the heirs of the said Evan Lloyd, excepting his son Newton and the petitioner in this case, made, executed and delivered a deed for the farm sought to be partitioned in this proceeding, on April 28, 1870, to Owen Rowland, said deed being of record in Cambria County in Deed Book, vol. 112, at page 325, and in this deed Augustine D. Flanigan and Tobitha Flanigan, the wife to whom he was subsequently married after the death of his wife, Mary Jane, join as grantors, but the petitioner, who was then a minor, did not join in the deed, nor did his guardian, and, therefore, the said Lloyd Rowland Flanigan has come into court alleging that his interest in said property has never been divested, and praying for a partition of one of these farms which was sold to Owen Rowland, and which was afterwards sold to the other parties whose names are mentioned in the petition for partition.

The first question for us to consider is whether or not the Orphans' Court has jurisdiction to award partition in this case.

In answer to that question, we cite section 1 of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, which reads as follows: "That the Orphans' Court of each county of this Commonwealth shall have jurisdiction, but not exclusive jurisdiction, in the partition and valuation of real estate within the county of any decedent, testate or intestate, whether such decedent was at the time of his death seized or possessed of such real estate solely or as tenant in common or joint owner with any other person or persons, and whether or not the surviving spouse of such decedent shall elect to take against his or her will, and notwithstanding there may be a limitation of an estate or interest in the premises, or some part thereof, to a person or persons not in existence, and several undivided interests in any premises derived from different ancestors by descent or devise may be parted or valued in one proceeding in said court: Provided, that such court shall not have such jurisdiction during the continuance of any life estate in the whole of such real estate."

The court, therefore, finds as a matter of law that the Orphans' Court has jurisdiction to grant partition in this estate in case the petitioner has an interest in said real estate.

It is contended on the part of counsel for the petitioner that the will of Evan Lloyd did not effect an equitable conversion by reason of the contingencies in said will, and particularly by reason of the fact that the funds to be realized from the sale of said real estate were not to be divided equally among the children of the deceased; and they further contend that, even though there was an equitable conversion by reason of the terms of the will,

that there was an election on the part of all of the heirs in interest to accept the property as real estate, and, therefore, there was a reconversion.

We do not feel it is necessary for us to decide at this time the question as to whether or not there was a reconversion, for, as we read the will, we believe that, under the terms thereof, there was not an equitable conversion of the decedent's real estate at the time of the death of Evan Lloyd, the testator.

In the case of Davidson v. Bright, 267 Pa. 580, 584, Mr. Justice Kephart says: "The law does not favor conversion, and it is not to be regarded as a formal rule of law without regard to its real purpose. Land should be regarded as land, and personalty as personalty, and creditors advancing on the basis of either should not run the chance of being deceived. Conversions will be presumed only so far as necessary to carry out the intention of testator. Land passes as land unless there is a conversion, and where such is testator's intention, the general rule is that the conversion takes place from the death of the testator; but when there is no intention to convert out and out and the power is discretionary in the executors or trustees, the course of descent is not broken; the land is still land; the heir-at-law takes; he may intermeddle with the estate and collect the rents and profits thereof."

In a still more recent case, that of Schoen's Estate, 274 Pa. 28, 33, Mr. Justice Kephart, speaking to the same point, says: "The law does not favor conversion, and, as a general rule, where there is a clear intent to convert, it takes effect from the death of the testator. Where, as here, there is a discretionary power of sale, or there is a necessity to sell to execute a will, or a fund is created from a blending of real and personal property that is devised as money, such conversion does not become effective in law until it is at least certain conditions will arise calling for its use. Conversion is a fiction and should not be dealt in until there is an absolute necessity for it.

"On the first survey of an estate, it may appear necessary to sell to carry out an intention; subsequent developments may make it unnecessary. The residuary legatees or persons beneficially interested may elect to take real estate as such and pay pecuniary legacies; a change in values may make it wholly unnecessary to sell; other conditions may arise causing the same result. The point we wish to make clear is, until conversion actually happens, land is still land and money still money. Conversion ordinarily takes place when a sale of the property is made."

It is well settled by the authorities that there is no conversion where the direction to sell is contingent. In the case of Boshart v. Evans, 5 Wharton, 551, 552, Mr. Justice Rogers said: "But it is said the only interest of the devisees is money, not land, and that ejectment is not the proper remedy. That where land is directed to be converted into money or money into land, it is to be treated as that species of property into which the one or the other is directed to be converted. But the direction to sell is contingent and not absolute; and until the contingency happens, the executors have no control over the estate nor any interest whatever in it. Until the appraisement and refusal to take the premises, after the death of the widow, the legal estate descends to the heirs-at-law, of whom the plaintiff was one, or to them as devisees; and in either case he can sustain an ejectment if otherwise entitled to the possession."

The case of Anewalt's Appeal, 42 Pa. 414, was a case in which the testator by his will directed that when his son became of legal age, appraisers were to be chosen to value the homestead farm, which the son was to have at the valuation if he chose; if he refused, the executors were to sell. A married

Lloyd's Estate.

daughter survived the testator and then died before O. became of age, intestate, leaving one son, who died soon after. Her husband then claimed her share as personalty. In that case Mr. Justice Thompson held that on account of the contingencies named in said will, the will did not effect an equitable conversion of the property.

We have found several cases in the books where the wording in the wills have been so very much alike, some in which the courts have held there was an equitable conversion, and others in which the courts have held there was not an equitable conversion, that it is very hard for this court to draw a line of demarcation and distinction between these reported cases. For instance, in the case of Laird's Appeal, 4 W. N. C. 473, a case where Francis Laird, the testator, by his will devised that "It is my will that . . . all my real estate be appraised and sold as soon as it can be done with advantage, and if any of my sons think proper to take the farm on which I now live at the appraisement, he shall have the privilege of doing so on paying the other heirs their respective shares; and it is my will that all the money received from the sale of my real estate be divided among my children, share and share alike," it was held that the will worked an equitable conversion. The Supreme Court, affirming the lower court, said: "The rule is too well settled to need the citation of authorities, that an express and explicit direction by the will to sell the real estate of the testator and divide the proceeds works a conversion of it into personalty on his death. In this case there was an express direction to sell. The fact that it further permitted one of his sons, at his option, to take it at the valuation to be made did not change the effect of the direction to sell. Whether or not a son acquired it, it was nevertheless a sale, and the one taking it became a purchaser. Until that period of time it continued personalty."

The case of Neely v. Grantham, 58 Pa. 433, was a case in which the testator directed that his wife should have his mansion and farm for life, and further ordered: "It is my will that if any one or two of my children wish to hold the old mansion property, after two of them is of age, they can do so by agreeing among themselves; if they cannot agree, they can get three disinterested persons to divide and agree for them—the eldest to have the first choice, and each of my children's share remaining in the property until they arrive at twenty-one years. If, in case none of my children purchase the old mansion, it must be sold to the best advantage for the use of my children, and not until after the decease of my wife." An attachment execution was issued against the son to attach his goods, chattels, debts, rights and money. The sheriff returned that he had attached all the interest of the son and all legacies given to him by the will in the hands of the executors of said will, and summoned them as garnishees. The farm was afterwards sold by the executrix under an order of the Orphans' Court. It was held that the attachment bound the proceeds of the land in her hands: by Thompson, C. J., and Read, J.; that the land was bound as such on the service of the attachment: by Sharswood, J.; that the order of the will to sell was a conversion, and it was bound as personal estate: Strong and Agnew, JJ., dissenting.

The case of Jones v. Caldwell, 97 Pa. 42, was a case in which the testator directed, inter alia, as follows:

"Item: After my decease, should she survive me, I give and bequeath all the income of my real estate, with all the debts due me and all the personal and mixed estate of whatsoever and wheresoever found, to my beloved wife, Sophia Andress, during her natural life or while she shall remain my widow, she paying all the taxes, water-rents, ground rents and interest due on the

mortgages on said estate. . . . Item: After my own and my wife's decease, it is my will that my executors shall dispose of all my property, real, personal and mixed, without any application to Orphans' Court, or make return to any Court of this Commonwealth, other than where collateral inheritance tax might occur, and I hereby authorize my said executors to make legal deeds to the purchasers of any of my real estate. . . . Item: After my own and my wife's decease, I give and bequeath to my five sons, Conrad B. Andress, Michael M. Andress, Samuel C. Andress, William Andress and Isaac T. Andress, one-eighth or share and share alike of five-eighths of my said estate, and to my three daughters, Mary B. Durrell, Rebecca Wood and Harriet Johnson, or either of their heirs or assigns, the three remaining three eighths or share and share alike of the said three-eighths."

Justice Paxson, delivering the opinion of the court, says: "An absolute direction to sell lands after the death of the testator's widow, and to divide the proceeds among his children, effects an equitable conversion thereof into personalty, and the interest of one of the children is not bound by a judgment against him, before a sale, as real estate. . . . In order to work a conversion, however, the direction to sell must be positive and explicit. It must not rest in the discretion of the executor nor depend upon contingencies. A direction to sell upon a future contingency does not effect an equitable conversion until an actual sale: Nagle's Appeal, 13 Pa. 260; Bleight v. The Bank, 10 Pa. 131; Stoner v. Zimmerman, 21 Pa. 394; Anewalt's Appeal, 42 Pa. 414; Chew v. Nicklin, 45 Pa. 84. The direction in the will of Michael Andress to sell his estate is as explicit as language can make it. Does the subsequent provision that, if his heirs shall agree to a division of the estate among themselves, the executor shall not be bound to sell, operate to prevent a conversion? We are of opinion that it does not, for the reason that the provision referred to is surplusage and may be stricken from the will without altering its legal effect. It merely gave the heirs the right to elect to take the property as real estate. The law gives them this right independently of the will. . . . The testator must have intended a conversion even in the event of a division of the estate among the heirs by agreement. There were eight heirs, and there appears to have been but five separate properties of unequal values. Be that as it may, to have divided them would have required either a sale between themselves or partition according to law. The latter would have necessarily involved an appraisement and sale, and, hence, a conversion. It was held in Laird's Appeal, 4 W. N. C. 473, that a provision by a testator in his will that any of his sons may take his real estate at an appraisement does not prevent equitable conversion under an explicit direction that his real estate be sold and converted into money. The foregoing views are not in serious conflict with Neely v. Grantham, 58 Pa. 433."

Justice Paxson then proceeds to remark upon and distinguish the cases of Neely v. Grantham, 58 Pa. 433, and Laird's Appeal, 4 W. N. C. 473, and in the concluding paragraph of his opinion says: "Neely v. Grantham does not seem to have been called to our attention when Laird's Appeal was decided. It was not cited, so far as the report shows, nor is it referred to in the opinion of the court. It appears, however, to have been rightly decided, and does not need qualification. The principle we regard as sound that where there is a positive direction in a will to sell real estate and it is coupled with no qualification as to a division of the property between the heirs, other than that which the law gives, such direction to sell works an equitable conversion. I do not see that this interferes with Neely v. Grantham; if it does, that case must give way to this extent to the later case of Laird's Appeal."

We have searched in vain to find any later authorities which bear upon the principle which Justice Paxson said was sound in the case of Jones *v.* Caldwell, 97 Pa. 42, and we have not been able to find any case in which the Supreme Court has disturbed the principle it has regarded as sound in that case. So, applying the facts in the case at bar to the law as laid down in the case of Jones *v.* Caldwell, 97 Pa. 42, we feel that it is incumbent upon this court to hold that there was no equitable conversion of the real estate of which Evan Lloyd died seized, under the terms of his last will and testament, for the reason that the direction to sell was coupled with a qualification as to the division of the proceeds between the heirs in the following language: "I direct my Executor aforesaid to expose my real estate aforesaid to sale and divide the proceeds among my children as follows: First, said proceeds to be divided in three equal parts, and two-thirds parts thereof to be equally divided share and share alike between my three sons, Benjamin, Abner and Newton, and the other one-third to be equally divided share and share alike between my three daughters, Anna, Emma and Mary Jane."

It is contended on the part of counsel for respondents that the statute of limitations has run against the petitioner, and, therefore, his petition should be dismissed.

At the time of the death of Mary Jane Flanigan, the mother of the petitioner, her husband took a curtesy or life interest in this property, and, therefore, the petitioner, while he would have the right to present his petition for partition of the property, yet he would not have the right of possession of the same until the death of his father, and the evidence submitted to the court was to the effect that the father, Augustine D. Flanigan, did not die until some time in the year 1924, and, inasmuch as he had joined with all the other heirs of Evan Lloyd, excepting Newton Lloyd and Lloyd Rowland Flanigan, in a deed to Owen Rowland for this property in 1870, Owen Rowland and those claiming under him were just in the position of life-tenants of the interest of the petitioner, and nothing they did could affect the interest of the remainderman, and, therefore, the statute of limitations does not apply in this case.

Counsel for respondents also offered in evidence certain receipts given by Lloyd Rowland Flanigan, and lay particular stress on the receipt of May 8, 1902, given to Mary Jane Lloyd, in the sum of $100, for the amount due Mary Jane Lloyd from Benjamin Lloyd, who accepted the real estate under the last will and testament of Evan Lloyd on June 22, 1860. This receipt was objected to at the time it was offered; we admitted it in evidence, but we are at a loss to know how this receipt, given for an interest which the petitioner had in the other farm of which Evan Lloyd died seized, could possibly have any bearing on the present case, and, therefore, do not consider the same as important. Another receipt, which the petitioner gave to Owen Rowland under the name of Evan Lloyd Rowland, was offered in evidence, and this receipt is admittedly a receipt of the petitioner. It is for $100 and in full for all claims against the said Owen Rowland. The receipt was given in 1889, long after Owen Rowland had sold this property, and there is nothing in it that bears any earmarks of being in payment of any interest which the petitioner had in the lands now sought to be partitioned, and, therefore, so far as these receipts are concerned, we feel that they have no direct bearing on this case.

The next position that counsel for respondents urged is that the law presumes done that which was to have been done. However, the deeds which the heirs of Evan Lloyd signed are in direct contradiction of that proposition, for

the grantee in that deed takes the precaution of having Augustine D. Flanigan and his wife join in the deed for the purpose of divesting his curtesy in the land, and there is no explanation in any of the deeds, either in the recitals or elsewhere, to indicate that the property of Evan Lloyd had ever been appraised or that his sons had accepted the same at the appraisement and paid out the money in accordance with the terms of his will.

Counsel for respondents have also laid stress upon the recitals in these deeds. Some of these recitals, which appear on the records in red ink, are perfectly meaningless. They do not in any way shed any light on the title, and none of these recitals in these deeds indicate that the executors of Evan Lloyd had his property appraised and that the sons took the same at the appraised value. Indeed, as we have heretofore indicated, all of the records, so far as they have come to the attention of this court, would seem to refute that idea, otherwise it would not have been necessary for the other heirs of Evan Lloyd to have joined in these deeds of conveyance.

After carefully considering the evidence, the authorities and the able briefs of counsel on both sides, we find that the will of Evan Lloyd, deceased, did not work an equitable conversion of his real estate, and that the petitioner, Lloyd Rowland Flanigan, is a legal heir of Mary Jane Flanigan, one of the daughters of Evan Lloyd, who died in 1868, and to whom he devised an undivided one-ninth interest in the proceeds to be derived from his real estate, and that Augustine D. Flanigan, the husband of Mary Jane Flanigan, died in 1924, and that in his lifetime he divested his life interest in the real estate sought to be partitioned by joining with the other heirs in a deed to Owen Rowland, and that at the death of his father, the petitioner, Lloyd Rowland Flanigan, got the right of possession of his interest in Evan Lloyd's estate, which had been devised to his mother, Mary Jane Flanigan, and as such owner he is entitled to have the property described in the petition partitioned.

And now, April 14, 1924, for the reasons above stated, an inquest in partition as prayed for is awarded in the estate of Evan Lloyd, late of the Township of Cambria, County of Cambria and State of Pennsylvania, deceased.

From H. W. Storey, Jr., Johnstown, Pa.