## Allison *against* Kurtz.

2 w 185
193   547.

A devise, " to my four sons, William, Robert, Richard and John, I leave the joint possession and use of my plantation, they giving the one-third of the produce yearly to their mother. And one year after her decease, and within two years thereafter, the said plantation, with all the lands I possess, are to be sold by my executors hereinafter named, and the price thereof equally divided amongst them ;" and, "likewise the grain and cattle are to go with the place, and to be at the disposal of my three sons, Robert, Richard and John, to enable them to pay the legacies herein mentioned." Held, to create a tenancy in common in the four sons, and not a joint tenancy ; and upon the death of one of the sons before the testator, his devise lapsed, and his brothers and sisters acquired, by descent, the same interest which he would have taken had he survived the testator.

The testator having appointed Robert and Richard executors, and Robert having died, the whole testacy passed to the surviving executor, the right of the other children only being in the money to arise from the sale when effected.

If a consideration of money is expressed in a deed of bargain and sale, there shall be no averment to the contrary so as to affect its operation as such: nor is any evidence to the contrary admissible.

Powers executed by deed or will need not recite or refer to the instrument creating the power, if the act done be such as cannot take effect but by virtue of the power. Hence, a conveyance by one who was an executor, with full power to sell and convey, shall be construed to be an execution of the power contained in the will, although that power be not recited.

ERROR to the common pleas of *Mifflin* county.

*Potter*, for plaintiff in error.
*A. S. Wilson* and *Blanchard*, contra.

The facts of this case are fully stated in the opinion of the Court delivered by

SERGEANT, J.—Writ of error to the court of common pleas of Mifflin county, in an ejectment brought to April term 1831, by Richard Allison, Jun., executor of Robert Allison deceased, the plaintiff in error who was plaintiff below, against Jacob Kurtz, for sixty-four acres of land in Union township.

The plaintiff's father, Robert Allison, by his will dated the 13th of March 1810, proved 13th of February 1821, devised, among other things, as follows. "To my four sons, William, Robert, Richard

II.—Y

[Allison v. Kurtz.]

and John, I leave the joint possession and use of my plantation, they giving one-third of the produce yearly to their mother, as above directed. And one year after her decease, and within two years thereafter, the said plantation, with all the lands I possess, are to be sold by my executors hereinafter named, and the price thereof equally divided amongst them. And what grain may be left in the ground at the time of my decease, and likewise the grain in the barn or granaries, and likewise the cattle of every kind, are to go with the place, and to be at the disposal of my three sons, Robert, Richard and John, to enable them to pay the bequests and legacies hereinabove mentioned. To prevent misapprehension, if Margaret is not married in three years after the sale of the place, she is then to receive her 200 pounds. The price of the place, when sold, to be equally divided between my four sons, after making provision for the payment of the several legacies above or within mentioned. And I appoint my sons Robert and Richard executors, &c." The legacies bequeathed were, "to my daughter Sarah Wells 150 pounds, 50 pounds to be paid one year after my death, and 100 pounds a a year after the place is sold. Mary Allison 200 pounds, 100 pounds to be paid on the day of her marriage, and 100 pounds two years after my place is sold. Margaret Allison 200 pounds, 100 pounds on the day of her marriage, and 100 pounds three years after the place is sold." Robert, the son, died unmarried before the testator, and Richard took out letters testamentary. The widow died in 1824.

William Allison and wife, and Richard Allison (the plaintiff) and wife, on the 31st of August 1825, made a deed of bargain and sale, purporting to be in consideration of 1600 dollars, to John Allison in fee, of one hundred and eighteen acres and two perches of land, by courses and distances, being about one-third of all the testator's lands, part of which, viz. sixty-three acres, was the land claimed in this suit. This deed recited the conveyances to Robert Allison, the testator, and that he, by his last will dated the 13th of March 1810, bequeathed all his land to his sons, and the aforesaid William Allison and Richard Allison being two of the heirs, and having two-thirds of each of the above mentioned tracts of land, as by recourse to the said cited papers will more fully appear—with a clause of general warranty. On the same day, William Allison and wife, and John Allison and wife, by a similar deed, conveyed an equal portion of the same lands, by courses and distances, to Richard Allison; and Richard Allison and wife, and John Allison and wife, conveyed in the same manner, another equal portion to William Allison. John Allison and wife, on the same 31st of August 1825, sold and conveyed the sixty-three acres in dispute to Andrew Sample, who, on the 1st of April 1826, sold the same to Christian Yoder, and the latter, by deed dated the same day, sold and conveyed to Jacob Kurtz, the defendant. The plaintiff gave evidence, though it was objected to by the defendant, that there was no money paid on draw-

[Allison v. Kurtz.]

ing the deeds between the Allisons; the sum was put in by the witness, who drew the deeds.

Exceptions were taken by the plaintiff to evidence, and also to the answers of the court to various questions proposed on his behalf. The jury gave a verdict for the defendant.

The question in this case was, whether the plaintiff was entitled to recover, notwithstanding his deed of the 31st August 1825, under which the defendant claimed. The plaintiff alleged, that this ejectment was brought as trustee for the three daughters. That by the death of Robert, the son, in the testator's lifetime, the devise to him lapsed. That the father, as to this one-fourth, died intestate; and one sixth of that fourth descended to each of the daughters, and the rest to the sons. That as the daughters had not been paid their shares, their right in the proceeds of the land was not devested ; the mutual conveyances of the sons to each other, by way of partition, conveyed no title, and the power under the will was never executed. He, therefore, claimed for the benefit of the three daughters, and unless they were paid, either the whole or portions of the land held by the defendant.

It seems to be clear, that the devise to the four sons is to them as tenants in common, and not as jointenants. There was, therefore, no right of survivorship by law, on the death of any one, nor does the will create it. By the death of Robert, the son, in his father's lifetime unmarried, the devise to him lapsed ; and the brothers and sisters acquired by descent the same interest which Robert would have taken had he survived the testator. The power to sell vested in Robert as surviving executor still remained in full force over all the lands. Under these circumstances, the whole estate in the land, legal or equitable, passed by the will to the executor. The rights of the children were only in the moneys to arise from the sale when effected. Their interest would not be bound by the lien of a judgment against them; Allison v. Wilson's Executors, 13 *Serg. & Rawle* 330; nor could they convey any part of the land; Morrow v. Breniger, 2 *Rawle* 185 ; unless, indeed, the charges were all paid off, in which case the heirs might be considered as acquiring a new title by purchase. *Ib.* Here that was not done, and therefore the deeds of the sons, considered merely as a conveyance of interest or partition, transferred nothing ; and the plaintiff, if entitled to any thing, might legally recover the whole lands from the other sons or their grantees.

But though invalid as a conveyance, was not the deed to John Allison, which is the one now to be considered, good as an execution of the power to sell under the will ? It is objected in the first place, that it was not a sale, but a partition among the brothers. But the deed purports to be a bargain and sale for a valuable consideration, and must be so deemed between the parties. If a consideration of money is expressed in a deed of bargain and sale, there shall be no averment to the contrary so as to affect its operation as such. Wilt. v. Franklin, 1 *Binn.* 519. Nor is any evidence to the contrary

admissible.  *Moore* 518 ; *Shep. Touch.* 322, cited *Ib.*  The evidence offered by the plaintiff in the court below, as to the consideration inserted in the deed, ought to have been rejected ; and though received, could have no operation to vary the character of this deed as a bargain and sale between the parties to it, or those claiming under them. Besides which, the deed to the purchaser, Sample, was executed the same day with the deed to John Allison, and I am inclined to think both ought to be treated as one conveyance, and the transaction considered as a sale to Sample, who paid full value for the land.

It is further contended that Richard the grantor did not execute the power, because he did not refer to it in his conveyance ; but, on the contrary, the three sons conceiving themselves entitled to Robert's share under the will, and therefore owners of all the lands of the testator, intended to partition them among themselves : and that this intention appears by the recital in the deed, that the grantors were two of the heirs, and had two-thirds of each of the tracts of land.

Powers to sell lands, for the purpose of paying debts or legacies, or arising portions for widows, daughters or *other* family branches, are so frequent in wills, that whatever relates to the subject is of considerable importance.  The former nice and subtle distinctions between a devise to executors to sell, and a mere direction that they should sell, are done away by the provisions of the act of the 31st of March 1792, by which they are placed on the same footing.  The executor, in the present case, had the full power and authority over the lands for the purposes designated in the will, and executed the deed within the limited time.  Now it has been decided so long ago as Sir E. Clere's case, 6 *Co.* 17, that if one having only a power to dispose of lands, but no interest in them, make a disposition of them without reference to the power, they shall be considered as passing by virtue of the power ; because otherwise the disposition would be inoperative and void.  The law, which mainly regards the design and object of the parties, will not suppose them to do a vain and *useless* thing ; but if there be any way in which their design can take effect, it shall be deemed to operate in that way.  And this is the ordinary rule as to all conveyances.  The policy of the common law is to take every man's grant so as to pass such an interest as shall be deemed most advantageous to the grantee.  2 *Co.* 35 ; 3 *Bac. Ab.* 387.  And where the grant is impossible to take effect according to the letter, then the law makes such a construction that the gift by possibility may take effect.  *Benigne faciendæ sunt interpretationes chartarum, ut res magis valeat quam pereat.  Co. Lit.* 183, *b.* 146, *b.* 301, 302, 313.  See Vanhorn's Lessee *v.* Dorrance, 1 *Dall.* 138.  The form of the instrument is not regarded ; the substance is every thing. So in Scrope's case, 10 *Co.* 143 : if a power be to revoke a former limitation and to make a new settlement ; a latter act that cannot stand with the former uses, is a revocation, though the deed creating the power be not referred to ; and therefore, according to the express

[Allison v. Kurtz.]

words and common understanding, it would be no revocation at all : *quia non refert an quis intentionem suam declaret verbis, an rebus ipsis aut factis.*  Powers executed by deed or will need not recite or refer to the instrument creating the power, if the act done be such as can not take effect but by virtue of the power.  *Powell on Powers* 111, 114.  And though improperly recited, the execution is valid.  *Ibid.* Generally speaking, the instrument must mention or refer to the *estate* on which it is to operate ; that cannot be supplied by parol. 1 *Atk.* 559, 659.  But even here, the same degree of liberality is adopted which has characterized courts of law and equity in deter-mining upon the execution of powers ; for it is held, that if there is no other property to answer a part of the terms used, except that over which there is a power, it will be deemed well executed, because otherwise it would have no operation.  Standen *v.* Standen, 2 *Ves. Jun.* 598 ; *Powell on Powers* 119.

So on the other hand, one supposing he has a power to charge, but which in fact is extinguished, makes a charge purporting to be an execution of the power ; yet if he has an interest to charge, the instrument will be sustained as valid for that.  Cross *v.* Hadson, 3 *Bro. Ch.* 31.  And lord Thurlow said, he never heard that because a man showed an intention to execute a power which he had not, the interest which he had should not bear out the disposition made. *Powell on Powers* 129.

Then to apply these principles to the present case.  Here was a design to convey the estate, manifested by a sufficient deed of bar-gain and sale.  The parties supposed it was valid as a conveyance of interest, and the deed did not recite or refer to the power of Rich-ard under the will.  The fact turns out to be that no interest exist-ed.  The deed then derives validity from the power which the grantor Richard clearly had under the will ; because the estate can pass in no other way.  It was at best only a mistake as to the form of the conveyance ; and though the power is not referred to, the vendee has the right, under established legal principles, to consider it as a muniment of title, and to resort to it for support, when the supposed foundation of his title proves insufficient.

It would, we think, be the extreme of injustice, if the grantor himself could, under pretence of mistake in the form of conveyance adopted, annul his own act, and take back the land after it has been paid for.  The daughters are entitled to their shares, but they must look for them to the plaintiff, the executor, entrusted by their father to sell, and not to an innocent purchaser from the trustee.

It remains to notice the point contained in the plaintiff's bill of exceptions to the rejection by the court below of the bond of indem-nity from Joseph B. Ard and Elias W. Hale to Andrew Sample, dated 3d of June 1829, offered by the plaintiff, and also of the evi-dence that the division of the estate was made in pursuance of the opinion of E. W. Hale, Esq.  This bond was executed after Sample had parted with the land, and after the deed to Kurtz.  There was

no pretence that Kurtz had not paid the purchase money of the land : the right of Kurtz, as was properly stated by the court below, depended on the will and deeds, and could not be affected by subsequent acts; more especially acts between Sample and others after Kurtz purchased. For these reasons, the bond was properly rejected, as was also the opinion of Mr Hale, which could have no bearing on the operation of the instruments of conveyance under which the defendant claimed.

Judgment affirmed.