## Jones *versus* Caldwell.

1. A positive testamentary direction to an executor to sell the testator's real estate, after the death of his widow, effects an equitable conversion thereof. And a daughter to whom the testator, by a subsequent clause in his will, gave and bequeathed a share of his estate, takes no interest in the real estate which can be bound by a judgment obtained against her in the lifetime of the testator's widow.

2. A subsequent provision in the will that if the heirs shall agree to a division of the estate among themselves, the executor shall not be bound to sell, does not prevent a conversion.

3. As this provision merely gave the parties interested in the proceeds the right to elect to take the land as such, which right the law gives them independently of the will, the provision may be struck from the will as surplusage, without altering its legal effect.

5. Neely *v.* Grantham, 8 P. F. Smith 433, remarked on and distinguished. Laird's Appeal, 4 W. N. C. 473, followed.

January 6th 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1880, No. 330.

Case stated, in the nature of a special verdict, filed by agreement of the parties, wherein Israel C. Caldwell was plaintiff and Thomas C. Jones defendant, setting forth the following facts:—

Michael Andress, late of the city of Philadelphia, died June 28th 1865, seised in fee simple of, inter alia, a house and lot of ground situate on the south side of Noble street, No. 139, in the city of Philadelphia. He left to survive him his widow, Sophia Andress, five sons and three daughters, among whom was Mary B. Durrell, intermarried with Edward Durrell.

By his last will and testament, dated February 7th 1864, duly proved July 5th 1865, he directed, inter alia, as follows:—

"*Item:* After my decease, should she survive me, I give and bequeath all the income of my real estate, with all the debts due me and all the personal and mixed estate of whatsoever and wheresoever found, to my beloved wife, Sophia Andress, during her natural life or while she shall remain my widow, she paying all the taxes, water-rents, ground-rents and interest due on the mortgages on said estate or that shall become due, and all the interest due or to become due on the notes of hand held against me, and keeping the property in good repair.

"*Item:* After my own and my wife's decease, it is my will that my executors shall dispose of all my property, real, personal and mixed, without any application to Orphans' Court, or make r turn to any court of this Commonwealth, other than where collateral inheritance tax might occur, and I hereby authorize my said

*[Jones v. Caldwell.]*

executors to make legal deeds to the purchasers of any of my real estate, provided, nevertheless, that they shall publish in two daily newspapers, one month daily, showing the time and place when the same is to be disposed of, which shall be at public auction; *but my executors shall not be bound to make such advertisement or sale, if all the legal heirs or their legal representatives shall agree to a division of said estate amongst themselves, notwithstanding the above provision for a sale,* but this will shall, nevertheless, be recorded in the Register of Wills' office in the city of Philadelphia.

"*Item:* After my own and my wife's decease, I give and bequeath to my five sons, Conrad B. Andress, Michael M. Andress, Samuel C. Andress, William Andress and Isaac T. Andress, one-eighth or share and share alike of five-eighths of my said estate, and to my three daughters, Mary B. Durrell, Rebecca Wood and Harriet Johnson, or either of their heirs or assigns, the three remaining three-eighths or share and share alike of the said three-eighths."

Sophia Andress, the testator's widow, died July 5th 1878.

On September 10th 1874, Israel C. Caldwell, the plaintiff here, recovered a judgment for $229 against Mary B. Durrell, one of the daughters of the said testator, who had become and then was a widow. She died intestate, October 31st 1876. On November 26th 1879, Thomas C. Jones, administrator *de bonis non cum testamentum annexo* of Michael Andress, deceased, sold the testator's real estate at public sale under the authority contained in the will. Israel C. Caldwell thereupon released the lien of his judgment from the premises sold, in consideration of an agreement by Jones, the administrator, that he would retain, out of the proceeds of sale, a sufficient sum to pay Caldwell's judgment, with interest and costs, provided it be determined that Mary B. Durrell's interest in the real estate of Michael Andress, her father, was such, on September 10th 1874, that Caldwell's judgment, recovered on that day, attached thereto as a lien, and remained a lien at the time of the sale.

If the court be of the opinion that on the above facts the plaintiff is entitled to judgment, then judgment to be entered for plaintiff for $229, with interest from September 10th 1874, and costs; but if not, then judgment to be entered for defendant; either party reserving the right to take a writ of error, &c.

The court entered judgment for the plaintiff for $304.50; whereupon the defendant took this writ of error, assigning for error the entry of judgment for plaintiff.

*Joseph A. Abrams* (with him *Joseph L. Tull*), for the plaintiff in error.—The explicit direction in the will of Michael Andress that his executor " shall " sell his real estate, after advertisement,

with authority to "make legal deeds to the purchasers," worked
an equitable conversion of the testator's real estate into personalty
from the time of his death, and his heirs or devisees took nothing
which could be bound by a judgment against them : Evans's Ap-
peal, 13 P. F. Smith 183 ; Brolasky *v.* Gally's Executors, 1 Id.
509 ; Allison, Executor, *v.* Wilson's Executors, 13 S. & R. 330.
The subsequent provision in the will, that the executor should not
be bound to sell if "all the legal heirs or their representatives
shall agree to a division of the said estate amongst themselves,"
does not prevent the conversion, and a distributee cannot, by his
election to take as land, work a reconversion : Willing *v.* Peters,
7 Barr 287 ; Laird's Appeal, 4 W. N. C. 473.    But in this case
the distributees did not so elect.    Where a discrétion whether to
sell or not is vested in an executor or devisee (as in Anewalt's
Appeal, 6 Wright 414), conversion does not take place ; but wher-
ever there is a clear intention to sell, conversion follows : Swann *v.*
Fennereau, 3 Vesey 41–50 ; Thornton *v.* Hawley, 10 Id. 130.

*Rudolph M. Shick,* for defendant in error, was not present at
the argument, but subsequently submitted a printed argument.—
To establish a conversion, "the will must direct it absolutely, *out
and out,* irrespective of *all* contingencies : Anewalt's Appeal, 6
Wright 414, per Thompson, J.    The direction here is subject to
a contingency and not within the rule.    If the heirs had come to
an agreement for a division of the realty, the executors would have
been powerless to sell.    It was discretionary with the heirs to take
as land, or to let the land be sold and take the proceeds.    The case
is similar to Stoner *v.* Zimmerman, 9 Harris 394, in which it was
held there was no conversion.    The subsequent devise to each of
his children of "one-eighth, or share and share alike, of * * *
my said estate," instead of giving them a share of the proceeds,
indicates that the intention of the testator was not imperatively to
sell.

Mr. Justice Paxson delivered the opinion of the court, January
24th 1881.

The portion of the will of Michael Andress which is the subject
of the present contention is as follows : "After my own and my
wife's decease, it is my will that my executor shall dispose of all
my property, real, personal and mixed, without application to the
Orphans' Court; and I hereby authorize my said executor to make
legal deeds to suit purchasers of any of my real estate, provided,
nevertheless, that they shall publish in two daily newspapers one
month, daily, showing the time and place where the same is to be
disposed of, which shall be at public auction ; but my executor
shall not be bound to make such advertisement or sale if all the
legal heirs or their legal representatives shall agree to a division

of said estate among themselves." The will then directs the proceeds of such sales to be divided among his eight children, share and share alike.

The single question for our consideration is whether the will works a conversion of the real estate. If it does, the judgment obtained by the defendant in error against Mary B. Durrell, one of the testator's children, was not a lien upon the real estate, and the judgment entered by the court below upon the case stated must be reversed.

An absolute direction to sell lands after the death of the testator's widow, and to divide the proceeds among his children, effects an equitable conversion thereof into personalty, and the interest of one of the children is not bound by a judgment against him, before a sale, as real estate: Allison *v.* Wilson, 13 S. & R. 330; Morrow *v.* Brenizer, 2 Rawle 185; Burr *v.* Sim, 1 Whart. 252; Allison *v.* Kurtz, 2 Watts 185; Gray *v.* Smith, 3 Id. 289; Simpson *v.* Kelso, 8 Id. 247; Hess *v.* Shorb, 7 Barr 231; Willing *v.* Peters, Id. 287; Silverthorn *v.* McKinster, 2 Jones 67; Parkinson's Appeal, 8 Casey 455; Wilson *v.* Shoenberger, 10 Id. 121; Brolasky *v.* Gally's Executors, 1 P. F. Smith 509; Evans's Appeal, 13 Id. 183; McClure's Appeal, 22 Id. 414.

In order to work a conversion, however, the direction to sell must be positive and explicit. It must not rest in the discretion of the executor, nor depend upon contingencies. A direction to sell upon a future contingency does not effect an equitable conversion until an actual sale: Nagle's Appeal, 1 Harris 260; Bleight *v.* The Bank, 10 Barr 131; Stoner *v.* Zimmerman, 9 Harris 394; Anewalt's Appeal, 6 Wright 414; Chew *v.* Nicklin, 9 Id. 84.

The direction in the will of Michael Andress to sell his estate is as explicit as language can make it. Does the subsequent provision, that, if his heirs shall agree to a division of the estate among themselves, the executor shall not be bound to sell, operate to prevent a conversion? We are of opinion that it does not, for the reason that the provision referred to is surplusage and may be stricken from the will without altering its legal effect. It merely gave the heirs the right to elect to take the property as real estate. The law gives them this right independently of the will. It is well settled that where real estate is ordered to be sold, the parties interested in the proceeds may elect to take the land as such: Smith *v.* Starr, 3 Whart. 62; Rice *v.* Bixler, 1 W. & S. 445.

The testator must have intended a conversion even in the event of a division of the estate among the heirs by agreement. There were eight heirs, and there appears to have been but five separate properties of unequal values. Be that as it may, to have divided them would have required either a sale between themselves or partition according to law. The latter would have necessarily involved an appraisement and sale, and hence a conversion. It was held in

[*Jones v. Caldwell.*]

Laird's Appeal, 4 W. N. C. 473, that a provision by a testator in his will, that any of his sons may take his real estate at an appraisement, does not prevent equitable conversion under an explicit direction that his real estate be sold and converted into money.

The foregoing views are not in serious conflict with Neely *v.* Grantham, 8 P. F. Smith 433. The facts of that case are essentially different. A testator directed that his wife should have his mansion-farm for life, and further ordered : " It is my will that if any one or two of my children wish to hold the old mansion property, after two of them is of age, they can do so by agreeing among themselves ; if they cannot agree, they can get three disinterested persons to divide and agree for them, the eldest to have the first choice, and each of my children's share remaining in the property until they arrive at twenty-one years. If, in case none of my children purchase the old mansion, it must be sold to the best advantage for the use of my children, and not until after the decease of my wife." An attachment in execution was issued against the son, and served on the executors as garnishees. It was held that the attachment bound the proceeds of the sale of the lands in the hands of the executors. THOMPSON, C. J., and READ, J., being of opinion that there was no conversion, but that the land was bound as such by the attachment; SHARSWOOD, J., that the order to sell worked a conversion, and it was bound as personal estate ; and STRONG and AGNEW, JJ., dissented. It will thus be seen that while three of the judges concurred in the judgment, though for different reasons, four were of opinion there was no conversion.

It must be conceded that the distinction between Neely *v.* Grantham and the later case of Laird's Appeal, *supra*, is very slight. Yet there is a difference. In Laird's Appeal the provision was that *any* of the testator's sons might take the real estate at the appraisement. This required an agreement between the sons as to *who* should take. They could have so agreed, and the property could have been taken without the provision of the will. In either event there would have been a sale and a conversion of the estate into money, which is precisely what the testator intended. In Neely *v.* Grantham the provision was " that if any *one or two* of my children wish to hold the old mansion property, after two of them is of age, they can do so by agreeing among themselves ; if not agreeing, they can get three disinterested persons to divide and agree for them, the eldest to have the first choice, and each of my children's share remaining in the property." This clause of the will could not be stricken out without essentially changing its legal effect. The right is not given to all the children to take; it is to one or two only, and the eldest to have the right of choice. It is true the children might have dis-

[Jones v. Caldwell.]

pensed with all this by agreement. Nevertheless, rights are given to a portion of them to the exclusion of others. It is not, as is in the case in hand, a provision which confers upon the children just what the law gives them without the will.

Neely v. Grantham does not seem to have been called to our attention, when Laird's Appeal was decided. It was not cited, so far as the report shows, nor is it referred to in the opinion of the court. It appears, however, to have been rightly decided, and does not need qualification. The principle we regard as sound, that where there is a positive direction in a will to sell real estate, and it is coupled with no qualification as to a division of the property between the heirs, other than that which the law gives, such direction to sell works an equitable conversion. I do not see that this interferes with Neely v. Grantham; if it does, that case must give way to this extent to the later case of Laird's Appeal.

The judgment is reversed, and judgment for the defendant below upon the case stated.