# Bright's Appeal.

100    602
f39SC¹328

1. Where a testator directs a legacy to be paid in preference to and before every and all other legacies, said legacy is entitled to priority in the distribution of a fund produced by the sale of real estate, converted by peremptory direction of the testator for the benefit of certain designated beneficiaries.

2. Where a testator imperatively directs his land to be sold, a mere postponement of the time of sale does not prevent a conversion being worked.

3. A. died seised of a homestead farm and other pieces of real estate. By his will, he left his widow a life estate in the farm, and directed that the rest of his estate should be sold for the payment of his debts, and of the legacies bequeathed by him. He then bequeathed to B. $4,000 to be paid to him "in preference and before all other legacies in this will bequeathed." To C. he gave $200, "to be paid to her out of the proceeds of the farm on which I now reside when it shall be sold, according as I

shall hereinafter direct." The after-direction was as follows (referring to his nephews and nieces): "I also bequeath to the said children the farm on which I now reside . . . . and at the death or marriage of my said widow, I direct my executors . . . . to sell my said farm, and I hereby authorize and empower them to make title in fee to the purchaser of the same, and divide the proceeds equally among said children," after deducting the legacy to C.,—*Held*, that the homestead farm did not pass to the nephews and neices as realty, but that there had been a conversion thereof under the terms of the will; and therefore, that from the fund realized from the sale of said farm, B. was entitled to be first paid a balance still due him on his legacy; that C. was next entitled to her legacy, and that the balance should then be distributed in equal shares between the nephews and nieces.

April 25th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Clinton County*: Of January Term 1882, No. 121.

This was an appeal by James W. Bright from a decree of the said court, confirming the report of an auditor appointed to distribute, among the legatees, a balance in the hands of the executor of the estate of John Harleman, deceased.

The facts of the case were as follows:—John Harleman the testator died in 1860, possessed of a certain homestead farm on which he resided, and divers other pieces of real estate, beside considerable personal property. He was childless and had adopted one Thomas H. Miller at an early age, whom he brought up as his own child. By his will, which was duly proved Jan. 31st, 1860, he directed all his personalty, not otherwise bequeathed, and all his realty except the homestead farm, to be sold by his executors and the proceeds applied first to the payment of his debts and the expenses of settling his estate, and the surplus, if any, to the legacies thereinafter mentioned. The will further provided as follows:

"And I give and bequeath to my said wife in lieu of her dower, aforesaid, the plantation or farm on which we now reside . . . . to have and to hold the said messuage and appurtenances so long as she shall remain my widow, to the end of her life, if she shall so long remain my widow, as aforesaid. . . . . I give and bequeath to my niece, Margaret Moore, daughter of James Moore, of Allison township, county aforesaid, the sum of two hundred dollars ($200), to be paid to her out of the proceeds of the farm on which I now reside when it shall be sold according as I shall hereinafter direct. . . . . I give and bequeath to Thomas H. Miller, who has lived with me from infancy, the sum of four thousand dollars, to be paid to him in preference, and before every and all other legacies in this will bequeathed, as soon after the first day of April (1866) eighteen hundred and

sixty-six as my executors can with prudence convert my real estate into money. . . . . I give and bequeath unto such children as my brother Thomas Harleman, my brother Jesse Harleman, and my sister Margaret Berry, shall severally have at the time hereinafter named, when my real estate shall be sold, to wit, the first day of April A. D. (1866) eighteen hundred and sixty-six, all the residue of my estate which shall be left after paying all the preceding legacies, all my just debts, and all the expenses legally incurred by my executors in settling up my estate, share and share alike to each child. I also bequeath to the said children the farm on which I now reside, subject to the life estate of my widow in the same, which I have hereinbefore bequeathed to her. And at the death or marriage of my said widow, Rachel M. Harleman, I desire my executors or the survivor of them to sell the said farm, and I hereby authorize and empower them to make title in fee to purchasers for the same, and divide the proceeds equally among the said children, giving them share and share alike, after deducting the legacy bequeathed to Margaret Moore. . . . . I hereby will and direct that none of my real estate, except so much as shall be necessary to pay my debts, shall be sold until the first day of April, (1866) eighteen hundred and sixty-six, but after that date shall be converted into money as rapidly as prudence will allow, and I hereby authorize and empower my executors to make said sales and to execute as good and lawful titles for the same to purchasers as I could if I were living."

In pursuance of the powers contained in the will, S. R. Peale, one of the executors named therein, (the other having renounced) sold all the testator's personalty and realty, except the homestead farm. The proceeds proved sufficient to pay the testator's debts, but not to discharge the legacy to Thomas H. Miller in full.

The testator's widow died in 1875, and on June 1st of the same year, the executor sold the homestead farm for $8,007.56, which constituted the fund for distribution.

Before the auditor, it was claimed in behalf of James W. Bright, to whom Miller had assigned his legacy for a valuable consideration, that the balance due on that legacy should be paid him from the fund in court; on the ground that by the will the whole of the testator's estate (subject to the widow's life estate in the homestead farm) had been converted into personalty and disposed of by the testator in legacies as such, and that Miller was to be preferred to all legatees, and paid in full, even though such payment to him should exhaust the entire estate. On the other hand it was claimed by the children of the testator's brothers and sister that the mansion farm was devised to them,

and that they took it under the will as real estate ; subject only to the life estate of the widow, and the payment of the legacy to Margaret Moore ; and that the estate in said farm vested in them immediately upon the death of the testator.

The auditor adopted the latter view, and accordingly reported, that after deducting the costs of the audit and the legacy of Margaret Moore, with interest, the residue of the fund should be divided equally among the testator's nephews and nieces.

Bright filed exceptions to this report inter alia, on the ground above mentioned, which were dismissed by the court and a decree entered by MAYER, P. J., ordering a distribution in accordance with the auditor's report.

Whereupon Bright took this appeal, assigning for error the said decree of the court.

*W. C. Kress* and *Seymour D. Ball*, for the appellant.—The testator's main design was to convert the whole estate, realty and personalty, into money, and give it to the legatees as such. He did not wish any one to take an estate in land except his widow. Among the legatees, he desired Thomas H. Miller to be paid "in preference to and before every and all other legacies in the will bequeathed."

This construction gives effect to the entire will. But by refusing Miller's preference, the seventh clause must be entirely disregarded. Such a construction of a will can only be made when its provisions are wholly irreconcilable : Horwitz *v.* Norris, 10 P. F. S. 261. When one legatee is preferred to another, the latter's legacy must abate : Murdoch's Appeal, 7 Casey 47.

The executors were positively directed to sell the homestead farm, the time of sale, only, being contingent. The land was therefore converted into money by force of the will : Allison's Ex'rs *v.* Wilson's Ex'rs, 13 S. & R. 330 ; Morrow *v.* Brenizer, 2 Rawle 185 ; Laird's Appeal, 4 Norris 339. It is only when there is a discretion left to the executor whether there shall be a sale or not, that no conversion occurs : Bleight *v.* The Bank, 10 Barr 131 ; Stoner *v.* Zimmerman, 9 Harris 394.

*Cline G. Furst* (with whom were *J. R. Youngman* and *Charles Corss*), for appellees.—The interest taken by the appellees under the will, was an interest in land, accompanied by a power of sale. They could have paid Margaret Moore her legacy of $200 charged on the farm, and demanded from the executor a conveyance of the title : Loomis' Appeal, 10 Barr 387. The provision in regard to Miller's legacy gave him no right to share in the proceeds of the homestead farm. It was intended to give him priority in point of time only, not in point of right : Duncan *v.* Alt, 3 P. & W. 382 ; Walls *v.* Stewart, 4 Harris 275.

The testator evidently knew that the special devise which he made of the mansion farm would prevent its contributing to the payment of any legacies, and for this reason, he made the legacy to Margaret Moore expressly payable out of it.

Mr. Justice PAXSON delivered the opinion of the court, October 2d 1882.

If there is anything clear in the will of John Harleman, it is that he intended the legacy to Thomas H. Miller should be paid in full. He says it shall " be paid to him in preference and before every and all other legacies in this will bequeathed." Language could not be more explicit. Nor has the testator left us in any doubt as to his reason for this preference. He was childless, and had taken Mr. Miller to his home when an infant and cared for him as his own child. In his will he speaks of him as one " who has lived with me from infancy."

The distribution made by the auditor and confirmed by the court postpones Miller's legacy. He appears to have received something on account of a former distribution, but how much is not stated. The present is a final account, and if Miller's legacy is not paid now it never can be.

The error into which the auditor and court below fell was in holding that the homestead farm was devised to the nephews and nieces of the testator as land. That it was converted by the will is too plain for argument. The testator directed all of his real estate to be sold for the payment of debts and legacies. Some of it he directs to be sold immediately. So much of it as was not necessary for the payments of debts he directed should not be sold until the first day of April, 1866. The homestead farm he devised to his wife during her life or widowhood ; if she remained his widow it could not be sold until after her death ; if she died or married prior to 1866 it could not be sold until that period. He gave a legacy of $200 to Margaret Moore " to be paid to her out of the proceeds of the farm on which I now reside when it shall be sold according as I shall hereinafter direct." The after direction was as follows :—" I also bequeath to the said children the farm on which I now reside, subject to the estate of my widow in the same, which I have hereinbefore bequeathed to her. And at the death or marriage of my said widow, Rachel Harleman, I desire my executors or the survivor of them to sell the said farm, and I hereby authorize and empower them to make title in fee to purchasers for the same and divide the proceeds equally among the said children, giving them share and share alike, after deducting the legacy bequeathed to Margaret Moore."

Here was an express direction to sell and divide the proceeds among his nieces and nephews. It depended upon no contingency

[Bradish v. McClellan.]

except time. It left nothing to the discretion of the executors. It is true the testator bequeathed the farm to the children subject to the life estate of the widow; but this was intended as a mere gift of the proceeds thereof, after deducting the legacy to Margaret Moore, as plainly appears in the concluding portion of the paragraph quoted. That the direction to sell the farm worked a conversion of the land into money is plain from all the authorities. I need only to refer to the recent cases of Laird's Appeal, 4 Norris 339, and Jones v. Caldwell, 1 Outerbridge 43. The children referred to took as legatees, and not as devisees; they took money, not land.

It is evident the testator was mistaken as to the value of his estate, and that all the legacies cannot be paid. Under these circumstances which of them is to be postponed or abated? Certainly not the legacy to Miller. He was not merely the principal object of the testator's bounty, but as to him the latter expressly declared that his legacy shall be paid "in preference and before every and all other legacies in this will bequeathed." It follows that Miller must be paid in full before either Margaret Moore or the nephews and nieces. The order of distribution will be as follows: 1. The legacy to Thomas H. Miller. 2. The legacy to Margaret Moore. 3. The balance to the nephews and nieces, share and share alike.

The decree is reversed at the costs of the appellees, and distribution ordered in accordance with the foregoing.