## Hackett's Estate

Before Stearne, acting P. J., Sinkler, Klein, Bolger, and Ladner, JJ.

*Eli Louis Cooper*, for accountant.

*Nathan Agran*, for exceptants.

LADNER, J., June 19, 1942.—Annie E. Hackett died November 24, 1935, leaving a holographic will naming no executor and on which letters of administration were granted to decedent's niece, Lydia M. Bowman, on August 20, 1940. She having died January 1, 1941, letters d. b. n. c. t. a. were then granted to Irwin Paul,

whose account was confirmed nisi by the adjudication to which the exceptions before us were filed.

By her will testatrix gave to her niece, Lydia, her clothing, jewelry, and moneys collected from societies and insurance, and provided further, "My home at 127 E. Wishart Phila Pa. to be Given to Lydia and Christ for a home as long as she lives at her Death to be sold and if Florence E. Seffert is living three Hundred Dollars to go to her if she has past out before Lydia Death to go back to my estate." Lydia is identified as Lydia Bowman and Christ as Chris Urback.

The life estates granted terminated at the death of Lydia on January 1, 1941. The power to sell not having been granted to any person by name or description, upon petition filed pursuant to section 28 (c) and (d) of the Fiduciaries Act of June 7, 1917, P. L. 447, this court, by decree of April 18, 1941, directed sale by the accountant to "carry into effect the directions of decedent's will". The account consisted mainly of the proceeds from the sale so directed.

At the audit Chris Urback, who had been tenant pur autre vie, presented a claim for $400, alleged to have been a loan made to testatrix for improvements to the Wishart Street property. This claim was admitted by the accountant and though more than six years old neither the accountant nor any party in interest pleaded the statute of limitations or objected to the allowance thereof, so that the learned auditing judge treated it as proved on the authority of Woods v. Irwin, 141 Pa. 278.

Thelma Stoudt presented a claim under an assignment made to her dated September 25, 1940, of a claim of Lydia Bowman (the life tenant) based on a writing under seal signed by testatrix February 18, 1935, for $1,000. Thelma Stoudt in turn assigned $500 of said claim to the Bridgeland Construction Company on September 5, 1941.

The account being audited was composed of proceeds of personal property to the amount of $81.64, together

with the proceeds of the sale of 127 East Wishart Street, sold as aforesaid long after the lien of decedent's debts, not of record, had expired. No suit had been brought on either of these claims, and they ceased being a lien with the expiration of the year after decedent's death. They were allowed by the auditing judge as against the proceeds of personal property accounted for, but refused as to proceeds of real estate.

At the audit it was contended by counsel for these claimants that the direction, at the beginning of the will, viz, "First i will all my just debts Funeral expenses and Tax if I owe any at the time of my Decease as can be done," worked a conversion, and also a similar result was produced by the direction to sell 127 East Wishart Street after Lydia's death for payment of legacies specified. The learned auditing judge refused so to hold and awarded the balance remaining after the payment of administration expenses pro rata to the legatees entitled.

The exceptions now before us charge this to be error. We are quite clear that the learned auditing judge committed no error in ruling that the direction to pay debts did not work a conversion nor operate to charge the debts on the real estate devised: Silar's Estate, 44 Pitts. 248, cited by him, is sufficient authority to support his ruling, and we merely add our own decision, McDermott's Estate, 19 Dist. R. 385, and that of the Supreme Court in Mitchell's Estate, 182 Pa. 530, which are to the same effect.

Nor do we find any error in the learned auditing judge's ruling that the express direction to sell at the termination of the life estate and distribute the proceeds as directed did not operate to work a conversion as to the creditors of testatrix from the date of her death. The Supreme Court in Yerkes v. Yerkes, 200 Pa. 419, has admonished us to keep constantly in mind that the doctrine of equitable conversion is a fiction invented to carry out the intention of a testator and

never to defeat it, and that its operation requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity; that it should never be overlooked that there is no real conversion, the property remaining all the time in fact realty; but for the purposes of the will, so far as it may be necessary, and only so far, is it to be treated in contemplation of law as if it has been converted. The presumption, no matter what the form of the words, is always against conversion and even where it is required it must be kept within the limits of actual necessity.

In Chew v. Nicklin, 45 Pa. 84, 87, the origin of the doctrine is stated to be ". . . nothing more than the application to deeds and wills of the principle of equity which treats that as done which ought to be done." If this clear statement is kept in mind, there ought to be no difficulty in holding its application within proper limits. In the case before us it is plain that testatrix intended her devised real estate to remain real estate until the termination of the life estates granted. It is equally clear that she did not intend the legatees to take real estate at that time but to receive personal property. Thus even if we treat her words "to be sold" as equivalent to a positive direction to sell rather than a mere authorization, nevertheless we would have no right arbitrarily to refer the conversion back to testatrix' death. To do so would be doing not "what ought to have been done" but what testatrix did not want done. We hold, therefore, that except as to legatee-distributees, or those claiming under *them*, the conversion cannot be regarded as worked until the death of the life tenant.

In so ruling we have not overlooked the line of cases cited by Mr. Hunter in his Commonplace Book, vol. 1, p. 264, in support of the proposition that a direction to sell at the death of the life tenant, so far as the *distributees* are concerned, operates as a conversion as of

testator's death. Broad language, so declaring, must be taken in connection with the facts of these cases. An examination will show that they are all cases in which the rights of the *distributees, or those claiming under them,* were involved. In Kessler's Estate, 264 Pa. 422, and Bright's Appeal, 100 Pa. 602, the question arose in connection with the character of the property that the *distributees* took. In Parkinson's Appeal, 32 Pa. 455, McClure's Appeal, 72 Pa. 414, and Pyle's Appeal, 102 Pa. 317, the question was raised by husbands of distributees dying intestate before the actual sale. In McClarren's Estate, 238 Pa. 220, Jones v. Caldwell, 97 Pa. 42, and Weeter's Estate, 21 Pa. Superior Ct. 241, the question arose as to judgment creditors of the *distributees.*

All of these cases are thus distinguishable from the instant case by the limitation recognized by Mr. Hunter and which we have italicized for emphasis. Where a testator directs, as in those cases, that the distributees are not to have real estate but only the proceeds thereof, there is no inconsistency in holding that *as to them, or those taking under them,* the property must be treated, regardless of the postponement of the time of sale, as though it were actually converted into the species of property that testator intended them to have. This is in entire harmony with the origin of the doctrine. Here, however, the creditors claim not as distributees nor through or under them, nor under the will but adversely to the will and to the legatees. Consequently, as to the *creditors* of *testatrix,* there is neither point nor necessity to invoke the doctrine and thereby extend their right to grasp the real estate which, by their own neglect, they omitted to preserve.

We have less compunction in rejecting the contentions of the creditors in this case because we observe they were also life tenants. When testator died they elected to enter in and enjoy the life estates devised them by her will. Having thus chosen to regard the

property in question as real estate then, and until the termination of the life estates, they and their assigns ought not now to be heard to claim that it must be regarded as personalty from the time of testator's death.

Counsel for claimant further argues that the language of the will indicates a blending of real and personal property for all purposes which necessarily operated to work a conversion. Without extending this opinion, now overly long, we content ourselves with saying we cannot imply a blending for all purposes as working a conversion from testatrix's death in face of a specific devise of the life estates in the real estate in question followed by an express direction to sell at the termination thereof. In this respect, the case before us differs widely from the blending cases cited in counsel's brief such as Williamson's Estate, 153 Pa. 508, and Mustin's Estate, 194 Pa. 437.

The exceptions are dismissed and the adjudication is now confirmed absolutely.